UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

ALAN M. BECKNELL, individually and on
behalf of all others similarly situated,

|  |  |  |
|---|---|---|
| | Plaintiff, | CLASS ACTION |
| v. | | CASE NO.: |

SEVERANCE PAY PLAN OF JOHNSON &
JOHNSON AND U.S. AFFILIATED
COMPANIES, and PENSION COMMITTEE
OF JOHNSON & JOHNSON;

*JURY TRIAL DEMANDED*

Defendants.

_____/

### CLASS ACTION ERISA COMPLAINT

Plaintiff Alan M. Becknell, individually and on behalf of all others similarly situated, by and through undersigned counsel, asserts to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### I.    SUMMARY

1.    For 30 years, plaintiff Alan Becknell worked at Johnson & Johnson until a disability rendered him unable to work. Although Becknell's employment was terminated for reasons entitling him to severance pay, defendants Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies and the Pension Committee of Johnson & Johnson nevertheless denied his claim for severance pay benefits. When he appealed this decision, which conflicts with the Plan's own governing language, he was ignored.

2.    Becknell has been harmed by the defendants' policy of denying severance pay benefits to employees who are terminated because they qualify for disability benefits. In his individual capacity and on behalf of all others similarly situated, Becknell brings this action under ERISA to challenge the defendants' denial of severance pay benefits. On his

own behalf and on behalf of the putative class, Becknell seeks all benefits owed by the Plan under these circumstances, and further seeks to clarify the rights of putative class members to future benefits.

## II.      JURISDICTION AND VENUE

3.      This Court possesses jurisdiction under 28 U.S.C. § 1331 as this is an action rising under the laws of the United States.

4.      Venue is proper in this this judicial district pursuant to 29 U.S.C. §1132(e) and 28 U.S.C. §1391(a) since the benefit plan that is the subject of this action is administered in the district, the defendants reside or can be found in the district, the breach took place, at least in part, in this district, a substantial part of the events or omissions giving rise to Becknell's claims occurred in the district and the defendants are subject to personal jurisdiction in the district.

## III.     PARTIES

5.      Plaintiff Becknell is an adult individual who resides in San Angelo, TX  76903. Becknell was employed by Johnson & Johnson for more than 30 years until 2007.

6.      Defendant Johnson & Johnson Severance Plan, an employee benefit plan administered by Johnson & Johnson and U.S. Affiliated Companies, is a self-insured benefit plan as defined by ERISA doing business in New Jersey and maintains its principal place of business at One Johnson & Johnson Plaza, New Brunswick, NJ  08933-7214. In this Complaint, "Plan" refers to this named defendant and all related, successor and predecessor entities to which these allegations pertain.

7.      Defendant Pension Committee of Johnson & Johnson is the "Administrator" and the "Named Fiduciary" of the Plan.

## IV.   LAW

**8.**    ERISA creates a comprehensive federal scheme regulating employee pension and welfare benefit plans sponsored by employers. The statute protects the rights of plan participants and beneficiaries in employee benefit plans and regulates the responsibilities of plan fiduciaries regarding plan administration, including the denial of benefits to claimants.

**9.**    ERISA provides plan participants and beneficiaries a private right of action against plans breaching their duties under ERISA, at 29 U.S.C. §1132(a)(1)(B). This right entitles claimants to "recover benefits due" and to clarify their "rights to future benefits under the terms of the plan" and to "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan." ERISA also provides successful participants and beneficiaries with attorneys' fees and costs. 29 U.S.C. §1132(g)(1).

**10.**    Benefit plans covered by ERISA must have a claims review procedure affording "a full and fair review" for participants who have been denied benefits. Under applicable precedent, a court reviewing a decision to deny benefits is by default reviewed *de novo* unless the benefit plan gives the administrator authority to determine the employee's eligibility or construe the terms of the plan. In that case an arbitrary and capricious standard of review applies. A plan and/or a plan administrator, however, must properly exercise this discretion to enjoy greater deference. Where a plan and/or a plan administrator fails to provide analysis or reasoning in the course of denying benefits, the plan and/or plan administrator has not exercised the discretion it is given. In such a case the arbitrary and capricious standard no longer applies and *de novo* review is applicable.

**11.** Even where an appeal is reviewed under an arbitrary and capricious standard of review, under applicable precedent the Court may grant the plan and /or plan administrator less deference. A reviewing court may, for example, employ a modified or heightened arbitrary and capricious standard of review where there is evidence of potential biases and conflict of interest in the decision-making.

## V.    FACTS

**12.** Becknell was born in 1959. He was employed by Johnson & Johnson from August 2, 1977 until October 16, 2007, when he was unable to continue working  as a Senior Engineer due to medical conditions that included back and left leg pain. These conditions rendered him completely disabled from his position as a Senior Engineer as he was unable to meet the requirements of his position.

**13.** Becknell was approved for short-term disability benefits through April 15, 2008. His long-term disability was approved through June 11, 2009. The appeal of the denial of continued long-term disability was unsuccessful.

**14.** In the course of pursuing his ultimately unsuccessful appeal, Becknell learned that he was eligible for severance benefits. As such, on October 25, 2012, Becknell made a written claim for severance benefits.

**15.** The terms of the *Severance Pay Plan of Johnson & Johnson and Affiliated Companies, Amended and Restated as of January 1, 2009*, attached as **Exhibit A**, describe the "severance events" that make employees eligible for benefits, at page 7, as follows:

4.1 Conditions of Benefits Eligibility
   a. An Eligible Employee may be eligible for the benefits provided in Article 5 if termination of employment with a U.S. Affiliated Company is permanent and results from any one of the following Severance Events: i. position elimination;

ii. an Eligible Employee's inability to meet the requirements of his or
her position (as determined by management of the U.S. Affiliated
Company employing the Eligible Employee at the time of
termination);

iii. reduction in force; or

iv. for such other reasons as the Pension Committee may, in its sole
discretion, deem appropriate.

16.     Becknell qualified for benefits under subparagraph ii because his disability

left him unable to meet the requirements of his position. The defendants nonetheless

denied his claim for severance pay. In a letter dated February 4, 2013 (attached as **Exhibit**

**B**), the denial was explained as follows:

> Based on the terms of the Disability Plans, your employment
> ended at the point that your short-term disability period ended
> and you moved to long term disability - on April 15, 2008. While
> you were an Eligible Employee immediately prior to April 15,
> 2008, your termination did not result from one of the severance
> events enumerated in Article 4.l.a. of the Plan, so you are not
> eligible to receive severance benefits under the terms of the Plan.
> In addition, since an individual is no longer and employee on
> regular payroll upon termination of employment you ceased to
> be an Eligible Employee under Article 2.7 of the Plan as of April
> 15, 2008, so events subsequent to that time would not result in
> eligibility for benefits under the Plan. Accordingly, you are not
> eligible for severance under the terms of the Plan.

17.     The defendants' initial denial of Becknell's severance benefits is nonsensical.

The first of the  two bases is the perplexing assertion that Becknell's termination did not

result from one of the severance events enumerated in the Severance Plan. One of the

enumerated events – an inability to meet the requirements of his position – is precisely

why he qualified for the disability benefits that resulted in his termination.

18.     The second of the defendants' initial bases for denial is likewise an endlessly

circular logical fallacy. The defendants appear to justify denying Becknell's severance

benefits by stating that because Becknell became disabled he was no longer an employee

5

and because he was no longer an employee he could not experience a severance event. This simply makes no sense, and is otherwise unjustified by the plan language.

19.     The February 2013 letter informed Becknell of his right to appeal and that a "Benefit Claims Committee will evaluate the claim within 60 days after the appeal has been filed and will make a decision." It also mentioned that the Committee had the right to an extension.

20.     The Severance Plan, at page 17, describes the review of Becknell's appeal of his denial. It states:

> 7.1 Claim and Appeal Procedures.
>       ***
>       e. The Committee shall afford any Eligible Employee requesting an
>       Appeal a full and fair review of the decision denying the Eligible
>       Employee's Claim; and the Committee in its sole discretion, may hold
>       a hearing to review any or all issues raised by the Eligible Employee
>       on Appeal. The Committee shall issue a written decision to the Eligible
>       Employee on the Appeal within sixty (60) days after receipt of the
>       Appeal (unless special circumstances, such as the need to hold a
>       hearing, require an extension of time, in which case a decision shall be
>       rendered as soon as possible but no later than one hundred-twenty
>       (120) days after the filing of the Appeal). In the event of an adverse
>       decision, the Committee's decision shall give specific reasons for the
>       decision, written in a manner calculated to be understood by the
>       Eligible Employee and shall include specific references to the
>       pertinent Plan provisions upon which the decision is based.

21.     On March 4, 2013, Becknell filed an appeal of the February 2013 letter denial by certified mail. Defendants did not respond to Becknell's appeal; neither did they request an extension.

22.     Thus, the defendants did not provide Becknell with "a full and fair review" of the denial of his severance benefits. Becknell has been deprived of severance benefits to which he is entitled without a written decision providing him specific reasons for denying his appeal.

23.    Becknell's anticipated severance benefits, to which he has been improperly denied, is estimated at between $85,000 and $170,000.

24.    Upon information and belief, the denial of Becknell's benefits results from a pattern, practice or policy of the defendants to deny severance benefits to persons terminated by reason of qualifying for disability benefits. In addition to Becknell, all others similarly situated have been harmed.

## VI.    CLASS ALLEGATIONS

25.    Becknell brings this action as a class action under Fed. R. Civ. P. 23 on his own behalf and on behalf of the following class:

> All former Johnson & Johnson employees who
>    (1) qualified for J&J disability benefits and
>    (2) thereafter left J&J but
>    (2) did not receive severance benefits.

26.    Johnson & Johnson is listed among the Fortune 500 and, upon information and belief, currently employs in excess of 100,000 persons. Members of the putative class, who are significant subset of this group, are sufficiently numerous that joinder of individual members in this action is impracticable.

27.    Common questions of law and fact substantially predominate over any questions affecting only individual members of the putative class, including:

   a.   whether or not members of the putative class are eligible for severance benefits under the Plan;

   b.   whether or not the defendants' interpretation and application of the Severance Plan is justified under any standard of review;

   c.   whether Becknell and the putative class are entitled to past benefits; and

   d.   whether Becknell and putative class are entitled to injunctive relief.

**28.** Becknell's claims as the putative representative party are typical of the claims of all members of the putative class. Becknell and all members of the putative class alike would otherwise qualify as beneficiaries under the Severance Plan but by reason of disability have been denied severance pay.

**29.** Becknell will fairly and adequately protect and represent the interest of each member of plaintiff class in that:

   a. the interests of Becknell are coextensive with those of all members of the plaintiff class since all have a mutual interest in seeking relief against the Plan;

   b. Becknell will diligently prosecute this action, has no interest or relationship with the defendants that would prevent him from litigating this matter fully and is aware that resolution of a class action is subject to court approval; and

   c. Becknell has retained competent attorneys experienced in class action and ERISA litigation who will competently, responsibly, and vigorously prosecute and maintain this action.

**30.** A class action will provide a fair and efficient method to adjudicate this controversy since the claims of the class members are virtually identical in that they raise the same questions of law and interpretation of the Plan and involve the same defenses. Moreover this action presents issues of generalized proof capable of resolution in a single adjudication while the alternative to the maintenance of claims as a class would be burdensome and inefficient and would require a costly, time-consuming, and repetitive presentation of evidence on common issues.

**31.** Finally, with respect to injunctive relief sought on behalf of the putative class, if the defendants are ordered to refrain from interpreting and applying the Plan in a manner that interferes with the rights of plan participants who were denied severance benefits because they became eligible for disability benefits, then such relief, if granted,

would apply generally to the entire class. Final injunctive relief and corresponding declaratory relief is thus appropriate.

### VII.   CLAIM AND PRAYER FOR RELIEF – CLAIM FOR BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B)

**32.**    Becknell re-adopts and re-allege paragraphs 1 through 31.

**33.**    The Severance Plan is a plan governed by ERISA.

**34.**    Becknell and class members are eligible employees, participants and beneficiaries under the Plan and are otherwise empowered to bring a civil action.

**35.**    Becknell and all other class members are qualified to receive severance benefits under the Plan but have been denied those benefits due to a plan interpretation that is arbitrary and capricious and cannot be reconciled with the actual Plan language.

**36.**    Because of the defendants' interpretation, Becknell and the class have incurred attorneys' fees and costs.

**37.**    To the extent required by law, Becknell has exhausted administrative remedies.

**38.**    The defendants did not comply with ERISA's procedural requirements in denying Becknell's severance benefits by failing to provide him with "a full and fair review" of the denial of his severance benefits. There is no analysis or reasoning to which Court can defer in reviewing the defendants' denial.

**WHEREFORE**, plaintiff Alan M. Becknell, on behalf of himself and all other similarly situated, demands the following:

a)  an order certifying this action under Fed. R. Civ. P. 23 as one brought on behalf of the class of similarly situated putative class members described above, with the named plaintiff as class representative and undersigned attorneys as class counsel;

b)  an order awarding past due benefits, per 29 U.S.C. §1132(a)(1)(B);

c) an order enjoining the defendants from interpreting the Severance Plan in a manner that inconsistent with the order of past due benefits;

d) an award of reasonable attorney's fees, costs and prejudgment interest, per 29 U.S.C. §1132(g)(1); and

e) any such other relief as this Court may deem just and proper.

## VIII.   JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: 7-31-2013

/s/ Lawrence A Katz, Esq
Lawrence A. Katz
**Coffey Kaye Myers and Olley**
718 Two Bala Plaza
Bala Cynwyd, PA 19004
(610) 668-9800
(610) 667-3352 (facsimile)
lakatzesq@aol.com

Gregory G. Paul*
**Morgan & Paul, PLLC**
409 Broad Street, Suite 270
Sewickley, PA 15143
(412)259-8375
(888)822-9421 (facsimile)
gregpaul@morgan-paul.com

Jordan M. Lewis*
José Javier Rodriguez*
**Kelley Uustal, PLC**
Attorneys for Plaintiff
700 S.E. 3rd Avenue, Suite 300
Fort Lauderdale, Florida 33316
(954) 522-6601
(954) 522-6608 (facsimile)
jml@kulaw.com
jjr@kulaw.com

*Attorneys for Plaintiff and the Putative Class*

---

* Pro Hoc Vice application will soon be filed.

# EXHIBIT "A"

## CERTIFICATION OF SEVERANCE PLAN RESTATEMENT

Effective as of January 1, 2009, the Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies is hereby amended and restated in its entirety in the form attached hereto and incorporated herein by reference.

DATED:  January 8, 2010                     _____

                                            E. DLUGACZ

                                            Member, Pension & Benefits Committee
                                            Vice President, Worldwide Benefits & Health Resources

*1/1/09 Restatement*

# SEVERANCE PAY PLAN

## OF

## JOHNSON & JOHNSON AND U.S. AFFILIATED COMPANIES

**Amended and Restated As of January 1, 2009**

# ARTICLE 1

## General

1.1    <u>Purpose</u> – The Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies was established by Johnson & Johnson to provide severance pay under certain circumstances to Eligible Employees whose employment with a U.S. Affiliated Company is terminated under a Severance Event described in Article 4.1a. The sole purpose for payment of benefits under this Plan is to assist Participants when they are unemployed during the transition period when they are attempting to secure a new position.

1.2    <u>Funding</u> – Plan benefits shall be paid from the general assets of U.S. Johnson & Johnson Companies.

1.3    <u>Effective Date</u> The Plan as amended and restated herein shall be effective as of January 1, 2009.[1]

1.4    <u>Prior Documents</u> – This Plan shall supersede all prior severance pay plans and any other policies or practices pertaining to severance pay in effect prior to the Effective Date.

---

[1] The Plan was adopted on September 8, 1992, and was amended and restated as of December 1, 1995; amended as of January 1, 2005; and amended and restated as of January 1, 2007, and January 1, 2009.

1

# ARTICLE 2

## Definitions

2.1    Administrator – The "Administrator" of this Plan is the Pension Committee of Johnson & Johnson (or a successor to such committee).

2.2    Appeal – An "Appeal" is a request filed with the Committee seeking review of the Claims Administrator's denial of a Claim.

2.3    Base Pay – "Base Pay" is an Eligible Employee's regular weekly base rate of pay in effect on the date the Eligible Employee's employment terminates as a result of a Severance Event. The regular weekly base rate of pay for an hourly or part-time employee shall be the product of the employee's hourly rate of pay and his standard weekly work hours, determined as of the employee's termination date.

2.4    Claim – A "Claim" is an application for benefits filed with the Claims Administrator.

2.5    Claims Administrator – The "Claims Administrator" is the organization, entity, or person that has been designated by the Administrator to determine Claims under Article 7 hereto.

2.6    Committee – The "Committee" is the Benefit Claims Committee appointed by the Administrator.

2.7    Eligible Employee – An "Eligible Employee" is a regular, full-time or part-time salaried or hourly employee of a U.S. Affiliated Company who is not a member of a collective bargaining unit (unless the employee is included in the Plan through an express provision in a collective bargaining agreement). An employee's full-time or part-time status shall be determined by the personnel practices and policies of the U.S. Affiliated Company employing the person. A "regular" employee shall mean an employee who is hired for an indefinite duration and who is on the regular payroll of a U.S. Affiliated Company. "Eligible Employee" shall in no event include an individual whose period of employment with a U.S. Affiliated Company is intended to be for a limited duration, including but not limited to, co-ops, interns, graduate and post-graduate fellows, and project-specific positions.

A person retained to perform services for a Johnson & Johnson Company (whether for a definite or indefinite duration) who is classified by that company as a fee-for-service worker, an independent contractor or a similar type of worker (rather than an employee) shall not be an Eligible Employee under this Plan, regardless of such person's status under common law and regardless of whether the person is or has been determined by a government agency or board or a court or arbitrator or other third party to be an employee for any other purpose,

2

including, but not limited to, for purposes of any employee benefit plan of a Johnson & Johnson Company (including this Plan) or for purposes of federal, state or local tax withholding, employment taxes or employment law.  A person shall also not be an Eligible Employee under this Plan if (i) that person commenced employment with a Johnson & Johnson Company as a result of an acquisition, merger, or other similar transaction involving a Johnson & Johnson Company and the person's Pre-Acquisition Employer, and (ii) such person is entitled to receive payments in the nature of severance or retention pay under a plan, agreement, policy, program, or arrangement maintained by a Johnson & Johnson Company or the person's Pre-Acquisition Employer.

2.8     Johnson & Johnson Company – A "Johnson & Johnson Company" is (i) Johnson & Johnson or (ii) any other entity that is a direct or indirect subsidiary, related entity, or affiliate of Johnson & Johnson.  A Johnson & Johnson Company shall also include any predecessor to such entity.

2.9     Participant – A "Participant" is an Eligible Employee whose employment with a U.S. Affiliated Company is terminated as a result of a Severance Event described in Article 4.1a and who meets the other eligibility conditions for the receipt of benefits under this Plan.

2.10    Pension Committee – The "Pension Committee" is a committee established by the Board of Directors of Johnson & Johnson and constituted to administer and supervise the Plan in accordance with Article 6.  The Pension Committee shall be governed by the terms of the Pension Committee Charter.

2.11    Plan – The "Plan" means the Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies as set forth herein and as amended from time to time.

2.12    Plan Sponsor – The "Plan Sponsor" is Johnson & Johnson.

2.13    Plan Year – A "Plan Year" is the calendar year.

2.14    Pre-Acquisition Employer – "Pre-Acquisition Employer" is the entity that employed a person immediately before such individual became an employee of a Johnson & Johnson Company as a result of an acquisition, merger, or other transaction between a Johnson & Johnson Company and such entity.

2.15    Proceeding – A "Proceeding" is any action under which an Eligible Employee or other person claims the right to receive Plan benefits, other than a Claim or an Appeal.

2.16    Related Company Severance Plan – A "Related Company Severance Plan" is any other plan, program, policy, or arrangement providing severance benefits that is maintained by a Johnson & Johnson Company or a Pre-Acquisition Employer (or an affiliate thereof).

3

*1/1/09 Restatement*

2.17    Separation Agreement and Release – A "Separation Agreement and Release" is a separation agreement that contains a general release of claims in favor of all Johnson & Johnson Companies and all related entities, affiliates, and persons, and such other terms and conditions as may be contained in a separation agreement required on a general basis or in a particular case by the U.S. Affiliated Company employing a particular Eligible Employee at the time his or her employment is terminated. A Separation Agreement and Release may consist of one or more separate documents and may require the execution of one or more supplemental releases. A Separation Agreement and Release shall not be effective under this Plan unless each component document has been properly executed and each document has become effective. The content of any particular Separation Agreement and Release and its terms and conditions shall be determined by and be subject to Article 4 and the business judgment of the U.S. Affiliated Company employing the Eligible Employee at the time his or her employment is terminated.

2.18    Severance Event – A "Severance Event" is an event which results in eligibility for benefits under this Plan, as defined in Article 4.1.

2.19    U.S. Affiliated Company – A "U.S. Affiliated Company" is a Johnson & Johnson Company that is organized under the laws of any State of the United States and that has its principal place of business in the United States (excluding Puerto Rico and other U.S. territories).

2.20    Years of Service –Subject to the exclusions in this Article 2.20, "Years of Service" means an Eligible Employee's  full years of Credited Service determined and credited under the terms of the Consolidated Retirement Plan of Johnson & Johnson as of the date the Eligible Employee's employment terminates as a result of a Severance Event, provided, however, that Years of Service shall include service with a Johnson & Johnson Company prior to age 21 and shall include service only through the date on which the Eligible Employee's employment terminates (not the end of the month in which the termination occurs). Years of Service shall be measured in full years, and partial years shall be disregarded.

Years of Service shall in no event include the following:

a.      Periods of employment for which an Eligible Employee has received payments in nature of severance pay under this Plan or a Related Company Severance Plan;

b.      Periods of employment that are, or will be, taken into account in determining payments in the nature of severance pay that is payable to an Eligible Employee under a Related Company Severance Plan;

4

c.  Periods of employment that precede the date with respect to which a Johnson & Johnson Company or a Pre-Acquisition Employer pays an Eligible Employee any retention or other payment in lieu of severance pay in connection with an acquisition, merger, or other similar transaction; and

d.  Periods of employment that precede the date on which an Eligible Employee previously terminated employment with a Johnson & Johnson Company or a Pre-Acquisition Company, provided the Eligible Employee was not eligible to receive payments in the nature of severance pay under this Plan or a Related Company Severance Plan at the time of such termination.

Periods of service with a Pre-Acquisition Employer shall be included in an Eligible Employee's Years of Service only if, and to the extent, approved by the applicable Johnson & Johnson Company and the Administrator.  Pursuant to Article 6.4, the Administrator, or its representative, shall have the sole and binding authority to determine all questions regarding an Eligible Employee's Years of Service, and such determination shall be final and binding for all purposes under the Plan.

*1/1/09 Restatement*

# ARTICLE 3

### Eligibility for Participation

3.1    <u>Eligibility Requirements</u> – Eligibility for participation in the Plan is available to all Eligible Employees as defined in Article 2.7 as of the Effective Date.

3.2    <u>Cessation of Eligibility</u> – Eligibility for participation in the Plan shall cease on the earliest to occur of:  (i) the date on which an Eligible Employee ceases to be eligible to receive benefits pursuant to Article 4.1b or 4.1c, 4.3, or 5.4; (ii) the date on which the Plan terminates, or (iii) the date on which the Eligible Employee has received the full benefit payable under Article 5.

6

# ARTICLE 4

### Eligibility for Benefits

4.1   Conditions of Benefits Eligibility

a.   An Eligible Employee may be eligible for the benefits provided in Articl5 if termination of employment with a U.S. Affiliated Company is permanent and results from any one of the following Severance Events:

    i.   position elimination;

    ii.   an Eligible Employee's inability to meet the requirements of his or her position (as determined by management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination);

    iii.   reduction in force; or

    iv.   for such other reasons as the Pension Committee may, in its sole discretion, deem appropriate.

b.   An Eligible Employee is not eligible for the benefits provided in Article 5 if his or her employment is terminated as a result of any one of the following events:

    i.   voluntary termination of employment by resignation, retirement or otherwise (unless the Pension Committee in its sole discretion deems that severance benefits shall be payable under a voluntary workforce reduction program sponsored by a U.S. Affiliated Company);

    ii.   the merger, divestiture, or other sale or disposition of all or part of a business unit or the transfer of all or part of a business function to an unaffiliated entity if the Eligible Employee is offered a position with the unaffiliated entity and the primary work location for such position is no more than 50 miles from the Eligible Employee's primary work location immediately prior to such transaction;

    iii.   the refusal of a position with a Johnson & Johnson Company, which, in the sole opinion of the Pension Committee, is comparable (in terms of base pay or salary and responsibilities) to the Eligible Employee's current position and for which the primary work location is no more than a 50-mile radius from the Eligible Employee's current primary work location, or the acceptance of employment with a Johnson & Johnson Company;

7

iv.    layoff with recall rights;

v.    discharge for (i) misconduct, (ii) a violation of applicable rules, policies, and/or practices, or (iii) conduct considered by the Pension Committee to be detrimental to a Johnson & Johnson Company; or

vi.    for such other reasons as the Pension Committee, in its sole discretion, determines to be cause for denying or discontinuing benefits under this Plan.

c.    As a condition of eligibility for both the commencement and the continuation of the receipt of benefits under this Plan, an Eligible Employee must not be conducting any work for a Johnson & Johnson Company (except for any work that may be requested pursuant to Article 4c(ii) below) or a competitor of the U.S. Affiliated Company employing the Eligible Employee at the time his or her employment is terminated, and must have fulfilled and be in compliance with all of his or her obligations to the Johnson & Johnson Companies, including but not limited to: (a) having returned all documents and other property related to any Johnson & Johnson Company, (b) being and remaining in full compliance with the confidentiality obligations and any non-solicitation and non-competition obligations of the applicable Employee Secrecy Agreement or similar agreement, and (c) not having any outstanding monetary obligation to any Johnson & Johnson Company (unless, in States in which such deductions are permissible, an agreement has been reached between the U.S. Affiliated Company employing the Eligible Employee at the time of termination and the Eligible Employee for sufficient deductions to be taken from the benefits to pay the obligation in full). In addition, as a condition of eligibility for both the commencement and the continuation of the receipt of benefits under Formula 2 of this Plan (in lieu of and not in addition to the benefits provided for under Formula 1), an Eligible Employee must execute a Separation Agreement and Release containing a general release of claims in favor of all Johnson & Johnson Companies and related entities and persons, in a form satisfactory to the U.S. Affiliated Company employing the Eligible Employee at the time his or her employment is terminated, and the Separation Agreement and Release must become effective. A Separation Agreement and Release may consist of one or more separate documents and may require the execution of one or more supplemental releases. A Separation Agreement and Release shall not be effective under this Plan unless each component document has been properly executed and each document has become effective. In the exercise of its business judgment, the management of the U.S. Affiliated Company employing the Eligible Employee at the time of

8

termination may also require in the Separation Agreement and Release that the Eligible Employee:

i.    not be conducting any work without prior written consent of the U.S. Affiliated Company employing the Eligible Employee at the time of termination, even if the work is not for a Johnson & Johnson Company or a competitor of a Johnson & Johnson Company;

ii.   consult at reasonable times upon reasonable notice and to cooperate fully with any Johnson & Johnson Company in connection with any business matter, investigation or legal matter as to which the Eligible Employee may have relevant information and to do so without further compensation if Plan benefits are being paid at the time the assistance is provided;

iii.  not disparage any Johnson & Johnson Company or any related entity or person and/or not apply for future work with any Johnson & Johnson Company and waive any right to conduct such work;

iv.   agree that the employee contribution for any continuing benefit coverage (e.g., medical) may be deducted from the severance pay; and

v.    agree to such other terms and conditions as the management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination, in the exercise of its business judgment, decides should be included in the Separation Agreement and Release it provides to the Eligible Employee.

Once an Eligible Employee has signed a Separation Agreement and Release and that Separation Agreement and Release has become effective, the Eligible Employee is no longer eligible to receive benefits under Formula 1 of the Plan.

4.2   <u>Severance Pay for Employees in Collective Bargaining Units.</u>

Severance pay, if any, for employees covered by a collective bargaining agreement will be governed by the specific provisions of such agreement.  Unless a collective bargaining agreement specifically and expressly incorporates this Plan, employees covered by a collective bargaining agreement will not be eligible to participate in this Plan.

9

4.3     <u>Determination of Eligibility</u>.

The Administrator shall, in its sole discretion, determine any factual questions concerning an Eligible Employee's eligibility for or entitlement to benefits and shall have absolute discretion in interpreting and applying the terms of this Plan. The Pension Committee may impose such other eligibility conditions on payment of benefits hereunder as it may deem advisable.

10

# ARTICLE 5

<u>Amount and Payment of Benefits</u>

5.1   <u>Amount of Benefits</u>.

a.   Subject to the provisions of Articles 5.1c, d and e, a Participant shall be eligible to receive severance pay benefits in accordance with the following Severance Pay Schedule:

<table>
<tr><td colspan="3" align="center"><b><u>SEVERANCE PAY SCHEDULE</u></b></td></tr>
<tr><td colspan="3"><b><u>Formula 1 – Basic Severance Pay – Applicable only if Participant Does Not Sign a Separation Agreement and Release that Becomes Effective (see Article 5.1b)</u></b>:<br><br>Total Benefit  = Four (4) weeks of Base Pay (without regard to Years of Service)</td></tr>
<tr><td colspan="3"><b><u>Formula 2 – Enhanced Severance Pay – Applicable only if Participant Signs a Separation Agreement and Release that Becomes Effective (see Article 5.1b)</u></b>:<br><br>Total Benefit = Two (2) weeks of Base Pay per Year of Service, subject to the following limitations:</td></tr>
<tr><td></td><td><b><u>Employee Type</u></b></td><td align="center"><b><u>Weeks of Base Pay</u></b></td></tr>
<tr><td rowspan="3"><b><u>Minimum Benefit</u></b>:</td><td><i>Non-exempt employees</i></td><td align="center"><i>6 Weeks</i></td></tr>
<tr><td><i>Exempt employees (not eligible for Johnson & Johnson Executive Bonus Plan)</i></td><td align="center"><i>8 Weeks</i></td></tr>
<tr><td><i>Exempt employees (eligible for Johnson & Johnson Executive Bonus Plan)</i></td><td align="center"><i>12 Weeks</i></td></tr>
<tr><td><b><u>Maximum Benefit</u></b>:</td><td><i>All Eligible Employees</i></td><td align="center"><i>104 Weeks</i></td></tr>
</table>

11

b.    Each Participant shall be provided with a Separation Agreement and Release by the U.S. Affiliated Company employing him or her at the time of termination. The Separation Agreement and Release will become effective if it is executed and returned by the Participant within the time period specified therein and not revoked by the Participant within the period for revocation stated therein.  If the Participant does not execute a Separation Agreement and Release that becomes effective, the Participant's severance pay benefit under this Plan shall be determined solely under Formula 1 of the above Severance Pay Schedule.  If a Participant does execute a Separation Agreement and Release that becomes effective, the Participant's severance pay benefit under this Plan shall be determined solely under Formula 2 of the above Severance Pay Schedule.

c.    A Participant who has previously received severance payments from a Johnson & Johnson Company in connection with his or her separation from employment will be eligible to receive severance benefits under this Plan, subject to Article 2.20 regarding previous severance payments from a Johnson & Johnson Company.

d.    The Pension Committee may, in its sole discretion, authorize a reduction in severance pay to a Participant hereunder by the amount of any payment that the Participant is entitled to receive for the period during which severance pay would otherwise be payable to the Participant under the Plan: (i) under any confidentiality, non-solicitation and/or non-competition agreement the Participant has signed, (ii) as unemployment compensation, or (iii) as any other type of wage replacement benefit to which the Participant is entitled by law, pursuant to the terms of a benefit plan or contract, or from a source to which a Johnson & Johnson Company contributes.

e.    If a Participant ceases to meet the applicable requirements for eligibility for or entitlement to the receipt of benefits under this Plan, no further payments will be made.

5.2   <u>Other Benefits</u>.

A Participant's eligibility, if any, for other benefits while severance pay is being received will be determined in accordance with the terms of the official plan documents concerning those benefits.

12

*1/1/09 Restatement*

5.3    Schedule and Timing of Severance Pay Payments.

Severance pay shall be paid in installments at the Participant's last regular base pay rate per payroll period, until all benefits have been paid, and, to the extent practicable, shall be paid on the Participant's normal payroll dates.

5.4    Cessation of Benefits.

Cessation of benefits shall occur on the earliest of (i) the date on which a Participant has received the full benefit payable under Section 5.1; (ii) the date on which benefit payments have been discontinued due to failure to abide by a condition imposed by Article 4.1 or 4.3 or payments have otherwise ceased or been offset under the terms of the Plan; or (iii) the date on which the Plan terminates.

5.5    No Vested Rights.

Nothing in this Plan shall be construed as giving any Eligible Employee, Participant or beneficiary a nonforfeitable or vested right to any benefits hereunder.

5.6    Time Limits Affecting Benefit Entitlement

Prior to commencing a Proceeding asserting a claim of entitlement to Plan benefits, an Eligible Employee must file with the appropriate decision maker both a Claim and an Appeal that are timely under Article 7.1. Any Proceeding asserting a claim of entitlement to Plan benefits must be commenced within 180 days after the date on which the Committee issues its decision on the Eligible Employee's Appeal. The failure either (i) to submit both a timely Claim and a timely Appeal, or (ii) to commence a Proceeding within the time period provided for in this Article 5.6 will result in the loss of any otherwise existing right to contested Plan benefits, unless the Committee in its discretion determines that extenuating circumstances require a different result.

5.7    Death of Participant.

If a Participant dies prior to payment of all severance pay due under the Plan, the Participant's surviving spouse, domestic or civil union partner, or estate (if the Participant is unmarried or does not have a surviving spouse or domestic or civil union partner) shall be entitled to receive the balance of the severance pay, but all benefits under Article 5.2 shall cease upon the Participant's death, except to the extent otherwise provided in the applicable plan or as required by law.

13

# ARTICLE 6

## Administration

6.1   The Employment Retirement Income Security Act of 1974.

This Plan is a welfare plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA").

6.2   Plan Sponsor.

Johnson & Johnson is the Plan Sponsor:

|  |  |
|---|---|
| Address: | One Johnson & Johnson Plaza<br>New Brunswick, New Jersey 08933 |
| Telephone: | (732) 524-0400 |

6.3   Named Fiduciary and Plan Administrator.

The Pension Committee shall be the "Named Fiduciary" within the meaning of Section 402(a) of the Employee Retirement Income Security Act of 1974, as amended, and shall carry out the duties of the "Administrator" of the Plan as required by ERISA.  The Pension Committee shall have the responsibilities and powers set forth in this Article 6.

|  |  |
|---|---|
| Address: | One Johnson & Johnson Plaza<br>New Brunswick, New Jersey 08933 |
| Telephone: | (732) 524-0400 |

6.4   Powers and Duties of the Administrator.

The Pension Committee, or its duly authorized representatives, shall have the authority to control and manage the operation and administration of the Plan, including all rights and powers necessary or convenient to carry out its functions hereunder, whether or not such rights and powers are specifically enumerated herein.  Without limiting the generality of the foregoing, and in addition to other powers set forth in this Plan, the Pension Committee shall have the following express authority:

a.   To have the sole and complete discretion to construe and interpret the Plan, to decide all questions concerning Base Pay, Years of Service, eligibility for participation and entitlement to benefits, and to decide any other questions concerning the interpretation or application of Plan terms;

14

*1/1/09 Restatement*

        b.      To prescribe procedures to be followed by Eligible Employees for applying for benefits hereunder;

        c.      To prepare and distribute, in such manner as the Pension Committee determines to be necessary or appropriate, information relating to the Plan;

        d.      To receive from any Johnson & Johnson Company and from Eligible Employees such information as shall be necessary for proper administration of the Plan;

        e.      To consult with counsel, accountants, actuaries, or other advisors (who may also be advisors for any Johnson & Johnson Company in the discharge of its responsibilities); and

        f.      To delegate its authorities and discretion hereunder.

6.5      <u>Pension Committee Members as Eligible Employees and Participants</u>

Members of the Pension Committee may be Eligible Employees and Participants but they shall not make any discretionary decision or take any actions affecting themselves as Eligible Employees or Participants, unless such decision or action is upon a matter that affects all other similarly situated Eligible Employees or Participants, and confers no special right, benefit, or privilege on the members of the Pension Committee not simultaneously conferred upon all other similarly situated Eligible Employees or Participants.

6.6      <u>Records and Reports</u>.

The Administrator shall take any actions it deems necessary or appropriate to comply with laws and regulations relating to maintenance of records, notification to Participants and Eligible Employees, reports to the United States Department of Labor, and all other requirements applicable to the Plan.

*1/1/09 Restatement*

# ARTICLE 7

### Claims and Appeals

7.1 <u>Claim and Appeal Procedures</u>.

a. An Eligible Employee (or his or her duly authorized representative) who wishes to assert a claim for Plan benefits may file with the Claims Administrator a signed written Claim that is timely (as described in this Article 7.1a), that specifically identifies the Plan benefits claimed and that describes all facts and circumstances entitling the Eligible Employee to payment of those benefits.  In the event an Eligible Employee has not received a Separation Agreement and Release providing for the payment of Plan benefits (or has received a Separation Agreement and Release that provides for the payment of Plan benefits in an amount that is less than the amount he or she believes to be due), the Eligible Employee must file a Claim with the Claims Administrator within one hundred-eighty (180) days after the Severance Event.  In all other cases, the Eligible Employee must file a Claim with the Claims Administrator no later than one hundred-eighty (180) days after the date on which payments under the Plan were discontinued or reduced.

b. The Claims Administrator shall notify the Eligible Employee of its decision within ninety (90) days after receipt of a Claim or, if special circumstances exist, within one hundred-eighty (180) days of receipt of the Claim.  If the Claim is denied in whole or in part, the Claims Administrator's notice of denial shall be in writing and shall give:

   i. the specific reasons for denial with specific reference to pertinent Plan provisions upon which the denial was based;

   ii. a description of any additional materials or information necessary for the Eligible Employee to perfect the Claim and an explanation of why the materials or information are necessary; and

   iii. an explanation of the Plan's Appeal procedure.

c. For a period of sixty (60) days after receiving the Claims Administrator's notice of denial, an Eligible Employee or his or her duly authorized representative may:

   iv. obtain and review pertinent documents; and

   v. submit a written Appeal to the Committee for review of the denial.

16

d.  An Eligible Employee submitting an Appeal shall be allowed to submit issues and comments in writing to the Committee.

e.  The Committee shall afford any Eligible Employee requesting an Appeal a full and fair review of the decision denying the Eligible Employee's Claim; and the Committee in its sole discretion, may hold a hearing to review any or all issues raised by the Eligible Employee on Appeal.  The Committee shall issue a written decision to the Eligible Employee on the Appeal within sixty (60) days after receipt of the Appeal (unless special circumstances, such as the need to hold a hearing, require an extension of time, in which case a decision shall be rendered as soon as possible but no later than one hundred-twenty (120) days after the filing of the Appeal).  In the event of an adverse decision, the Committee's decision shall give specific reasons for the decision, written in a manner calculated to be understood by the Eligible Employee and shall include specific references to the pertinent Plan provisions upon which the decision is based.

17

*1/1/09 Restatement*

# ARTICLE 8

## Miscellaneous

8.1   <u>No Guarantee of Employment, Etc.</u>

Neither the creation of the Plan nor anything contained herein shall be construed as giving any Employee any right to remain in the employ of any Johnson & Johnson Company (or otherwise alter the employment at will relationship), any equitable or other interest in the assets, business, or affairs of any Johnson & Johnson Company, or any right to challenge any action taken or policy adopted or pursued by any Johnson & Johnson Company.

8.2   <u>Controlling Law</u>.

The terms of the Plan and the rights and duties of all parties hereto or persons affected hereby shall be construed and determined according to ERISA to the extent applicable.  It is intended that the Plan shall be an employee welfare benefit plan as described in Section 3(1) of ERISA.  In the event of any ambiguity in the Plan, the interpretation of the Plan shall be within the sole discretion of the Pension Committee, and its interpretation shall be binding for all purposes.

8.3   <u>Severability</u>.

If any provision of the Plan is held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining parts of the Plan, and the Plan shall be construed and enforced as if the illegal and invalid provision were not included.

18

# ARTICLE 9

### Amendment and/or Termination

9.1   Right to Amend or Terminate

Johnson & Johnson, as Plan Sponsor, reserves the absolute right to amend or terminate this Plan, at any time and in whole or in part, without prior consultation or notice to Eligible Employees and Participants of the Plan.

9.2   Termination or Amendment Procedure.

The right to amend or terminate this Plan may be exercised by resolution adopted by the Pension Committee or by its duly authorized representatives.

19

*1/1/09 Restatement*

# EXHIBIT "B"

02/21/2013  19:03   3259443803            FEDEX OFFICE                PAGE  02/04

*Johnson & Johnson*

February 4, 2013

Mr. Alan Becknell
57 East 41st Street
San Angelo, TX 76903

Re:  Severance Plan Claim

Dear Mr. Becknell:

This letter is in response to your letter dated October 25, 2012 and received on November 6, 2012 in which you make a claim for benefits under the Severance Pay Plan of Johnson & Johnson and US Affiliated Companies (the "Plan").

According to our records, you joined the Johnson & Johnson Family of Companies (Company) on August 2, 1977.  You continued with the Company until you started a short term disability effective October 16, 2007.  Your short term disability extended for the maximum 182-day period, at which point you qualified for long term disability effective April 15, 2008.  You continued to qualify for long term disability through June 16, 2009.  At that time, it was determined that you no longer qualified for long term disability.

Under the Plan, to be eligible for severance, an individual must be an Eligible Employee, as defined in Article 2.7, which includes the following:

> An "Eligible Employee" is a regular, full-time or part-time salaried or hourly employee of a U.S. Affiliated Company..............A "regular" employee shall mean an employee who is hired for an indefinite duration and who is on the regular payroll of a U.S. Affiliated Company.

Moreover, an individual who is an Eligible Employee is only eligible to receive severance benefits under the Plan if the individual's termination of employment occurs as a result of certain enumerated circumstances.  Article 4.1.a provides that:

> a      An Eligible Employee may be eligible for the benefits provided in Article 5 if termination of employment with a U.S. Johnson & Johnson Company is permanent and results from any one of the following Severance Events:
>
> i.      position elimination;
>
> ii.      an Eligible Employee's inability to meet the requirements of his or her position (as determined by management of the Johnson & Johnson Company employing the Eligible Employee at the time of termination);

  iii  *reduction in force; or*

  iii.  *for such other reasons as the Pension Committee may, in its sole discretion,*
    *deem appropriate.*

Accordingly, the timing of, and circumstances giving rise to, your termination of employment is critical to the determination of your eligibility for severance under the Plan.

Under the terms of the Short Term and Long Term Disability Plans (collectively, the "Disability Plans") under which you were covered, an employee's STD benefits are paid through the regular payroll with all appropriate payroll and employment taxes withheld, up to a maximum of 26-weeks. If an individual is unable to work, with or without reasonable accommodation, at the end of the 26-week STD period, the individual's employment is considered terminated. The 2008 Summary Plan Description for the Disability Plans (the "2008 Disability SPD" -- enclosed herewith) states, under the heading "LTD Employment Status":

  *If you do not return to work after 26 weeks of an approved disability, you will be considered*
  *terminated regardless of whether you begin receiving LTD payments. At that time, your*
  *employment status is considered inactive and there is no guarantee of your reinstatement to*
  *your job unless otherwise required by any Workers' Compensation laws in effect in the state in*
  *which you reside.* (p. 12)

Based on the terms of the Disability Plans, your employment ended at the point that your short-term disability period ended and you moved to long term disability -- on April 15, 2008. While you were an Eligible Employee immediately prior to April 15, 2008, your termination did not result from one of the severance events enumerated in Article 4.1.a. of the Plan, so you are not eligible to receive severance benefits under the terms of the Plan. In addition, since an individual is no longer an employee on regular payroll upon termination of employment, you ceased to be an Eligible Employee under Article 2.7 of the Plan as of April 15, 2008[1], so events subsequent to that time would not result in eligibility for benefits under the Plan. Accordingly, you are not eligible for severance under the terms of the Plan.

If you disagree with this decision, you are entitled to appeal and have the denial of your claim reviewed. You (or your appointed representative) can appeal and request a claim review within 60 days after receipt of this denial notice. The appeal must be in writing and sent to the following address:

  Johnson & Johnson
  Worldwide Benefits & Health Resources
  Benefit Claims Committee
  P.O. Box 2634
  New Brunswick, NJ 08901

---

[1] The fact that LTD benefits are paid from the trust established to fund the LTD plan rather than through regular payroll like STD benefits further supports the determination that you ceased to be an Eligible Employee on April 15, 2008.

The Benefit Claims Committee will evaluate the claim within 60 days after the appeal has been filed and will make a decision. If more time is needed, the law allows the Committee a 60-day extension, so long as the appellant is notified in advance of the need and reasons for the extension. The Committee will provide a written decision on the claim, stating the reason for the decision and any applicable Plan provision or other material on which it is based. The Benefit Claims Committee has full authority and discretion to decide claims, and its decisions are final and binding.

Sincerely,

William A. Wilkinson
Manager, Global Benefits