* NOT FOR PUBLICATION *

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
                                    :
ALAN M. BECKNELL, individually and  :
on behalf of all others similarly situated :
                                    :
              Plaintiff,            :
                                    :
      v.                            :  Civ. Action No. 13-4622 (FLW)(TJB)
                                    :
SEVERANCE PAY PLAN OF               :       **OPINION**
JOHNSON & JOHNSON AND U.S           :
AFFILIATED COMPANIES and            :
PENSION COMMITTEE OF JOHNSON        :
& JOHNSON,                          :
                                    :
              Defendants.           :
_____:

**WOLFSON, United States District Judge:**

    This putative class action case, involving the denial of Plaintiff Alan M. Becknell's ("Plaintiff" or "Mr. Becknell") claim for severance benefits under the Severance Pay Plan of Johnson & Johnson and Affiliated Companies (the "Severance Plan") established under Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B), et seq, comes before the Court on a motion for summary judgment filed by Defendants Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies and Pension Committee of Johnson & Johnson ("Defendants"), pursuant to Federal Rule of Civil Procedure 56(c). Plaintiff's claim is that under the plain language of the Severance Plan he was entitled to receive severance benefits after having been enrolled in the Severance Plan's long-term disability program, and that he is entitled to de novo review of Defendants' decision denying him such benefits. Defendants, however, in their motion for summary judgment, contend that the denial of Plaintiff's claim for

1

severance benefits is subject to the arbitrary and capricious standard of review, and their decision was reasonable based because the termination of Plaintiff's employment did not result from a severance-eligible event, as defined in the Severance Plan.  For the reasons set forth below, the Court finds that Defendants' determination is consistent with the language of the Severance Plan and therefore, reflects a reasonable interpretation of the Severance Plan's definition of severance eligible events.  Accordingly, the Court grants Defendants' motion for summary judgment; Plaintiff's Motion for Class Certification is denied as moot.

## BACKGROUND

The following facts are undisputed unless otherwise noted.  From August 2, 1977 to October 16, 2007, Mr. Becknell was employed by Ethicon, Inc., a subsidiary of Johnson & Johnson ("J & J"), and a participating company under the Severance Plan.  Defs. R. 56.1 Statement ("Defs. Facts") at ¶ 1; Wilkinson's Certification ("WAW Cert.") Ex. D.  The Severance Plan is maintained as an ERISA welfare benefit plan. Defs. Facts at ¶ 7.  The "Administrator" of the Severance Plan is the "Pension Committee of Johnson & Johnson."  WAW Certif. Ex. A ("Severance Plan") § 2.1.

Under the Severance Plan, an Eligible Employee may be eligible for benefits:

if termination of employment . . . is permanent and results from any one of the following Severance Events:

i. position elimination;

ii. an Eligible Employee's inability to meet the requirements of his or her position (as determined by management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination);

iii. reduction in force; or

iv. for such other reasons as the Pension Committee may, in its sole discretion, deem appropriate.

[Id. § 4.1(a). ]

The Severance Plan defines "Eligible Employee" as "a regular, full-time or part-time salaried or hourly employee of a U.S. Affiliated Company." Id. § 2.7. A "regular" employee "shall mean an employee who is hired for an indefinite duration and who is on the regular payroll of a U.S. Affiliated Company." Id. The power to make decisions regarding eligibility for severance benefits rests with the Administrator: "[t]he Administrator shall, in its sole discretion, determine any factual questions concerning an Eligible Employee's eligibility for or entitlement to benefits and shall have absolute discretion in interpreting and applying the terms of this Plan." Id. § 4.3.

Defendants also offer their employees a Long-Term Disability Income Plan, which provides "long-term disability income protection." See Becknell Certif. Ex. G ("Disability Plan") at 1. The Disability Plan provides that, subject to all the terms, conditions, and limitations of the Disability Plan, "benefits under the [Disability] Plan will be payable for a period of Total Disability provided that the Participant's Application for Benefits is approved by the Claims Service Organization . . . ." Id. at 11. "Total Disability," for periods of disability after July 1, 2004, is defined as follows:

> (a) during the Elimination Period,[1] the complete inability of the Participant, due to Sickness or Injury to perform the Essential Functions of his or her Regular Occupation, with or without reasonable accommodation, AND
>
> (b) during the portion of any period of disability not exceeding 12 months following the duration of the Elimination Period, the complete inability of the Participant, due to Sickness or Injury, to perform the Essential Functions of his or her Regular Occupation, with or without reasonable accommodation; AND
>
> (c) during the remainder, if any, of the period of disability, the complete inability of the Participant, due to Sickness or Injury, to perform ***any job*** for which the Participant is (or may reasonably

---

[1] The Elimination Period is "a period of continuous total disability due to Sickness or Injury that extends 26 weeks." *Id.* at 2.

3

>become) with or without accommodation qualified by training, education or experience.
>
>Disability Plan at 6.

A participant may not receive any benefits under the Disability Plan "on or after the Date the Participant becomes self-employed or returns to work for pay with the Employer or any other employer." Id. at 14.

The Claims Service Organization is "a corporation, or other entity, retained by the Plan Administrator on behalf of the [Disability] Plan to provide specified administrative services to the [Disability] Plan." Id. at 2. It appears that the Claims Service Organization for the Disability Plan is "Reed Group." See WAW Certif. Ex. E ("Disability Plan Summary") at 5 ("If Reed Group approves your disability . . ."). Following the initial submission of a claim for long-term disability benefits, the Claims Service Organization reviews the claim and approves or denies it. Id. at 9. If the claim is denied or subject to a limitation, the Participant may request that the Claims Service Organization again review the claim. Id. at 10. If the denial or limitation is upheld, the second appeal is reviewed by the J & J Pension Committee, which is also the Plan Administrator. Id. at 4, 10.

On October 16, 2007, Plaintiff began a short-term disability ("STD") leave. Defs. Facts at ¶ 2. He exhausted his 26-week STD leave on April 15, 2008, but did not return to work after that date. Id. at ¶ 3. Subsequently, Plaintiff applied for, and received, long-term disability ("LTD") benefits for fourteen months, from April 15, 2008 to June 11, 2009. Id. at ¶ 4. He was not re-employed by Ethicon or any other J & J affiliates. Id. at ¶ 6.

Three years later, Plaintiff sent a letter, dated October 25, 2012, to Ethicon's Corporate Benefits department[2] requesting an application for severance benefits based on his employment with J & J. Id. at ¶ 23. By letter dated February 4, 2013, Plaintiff's claim was denied by the Claims Administrator. Id. at ¶ 26. The denial letter concluded that Plaintiff's "termination [on April 15, 2008] did not result from one of the severance events enumerated in Article 4.1a of the Plan" and therefore, found that Plaintiff was "not eligible to receive severance benefits under the Plan." WAW Cert. Ex. H ("Denial Letter") at 2. Further, the denial letter stated that Plaintiff's loss of LTD eligibility in 2009 could not constitute a Severance Event resulting in eligibility for plan benefits because Plaintiff's employment had already ended. Denial Letter at 1–2.

On March 4, 2013, Plaintiff, through his counsel, appealed the Claim Administrator's determination to the Benefit Claims Committee (the "Committee") in accordance with the Severance Plan's administrative procedures. Defs. Facts ¶ 28. According to the Severance Plan, the Committee had 60 to 120 days to issue a decision. Severance Plan § 7.1(c). However, Plaintiff had not received a decision on his appeal by July 31, 2013, and so Plaintiff initiated the instant suit. Defendants dispute that they received Plaintiff's March 4, 2013 Letter in a timely manner, see Defs. Facts ¶ 29, but nonetheless, the Committee issued a decision on December 11, 2013—during the pendency of this case—which upheld the Claims Administrator's decision for the same reasons that were presented in the Denial Letter. WAW Certif. Ex. K ("Appeal Letter"), at 1–3.

In the instant matter, Defendants move for summary judgment on the grounds that their decision to deny Plaintiff's request for severance benefits was not arbitrary and capricious.

---

[2] The Corporate Benefits department is the designated Claims Administrator for the Severance Plan. Id. ¶ 17.

Plaintiff opposes this Motion, and further moves for Class Certification on behalf of those similarly situated.

## DISCUSSION

I.  **Standard of Review**

   A.  **Summary Judgment**

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206–07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify

specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at 586). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). A nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. S.E.C. v. Antar, 44 Fed. Appx. 548, 554 (3d Cir. 2002). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

### B.  Standard of Review Under ERISA

In evaluating Plaintiff's claim, the Court's first task is to determine the applicable standard of review under ERISA. Cases arising under ERISA are generally reviewed de novo, or under the arbitrary and capricious standard of review. Ordinarily, a denial of benefits under ERISA is to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Thus, where the plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be dismissed if reasonable." See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997)

(quoting Firestone, 489 U.S. at 111).  In other words, when a plan administrator has discretion to determine a claimant's eligibility for benefits, the plan administrator's decision is subject to review under an arbitrary and capricious standard.  Doroshow v. Hartford Life and Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009).

Here, the Severance Plan grants "absolute discretion" to the Pension Committee or its duly authorized representative.  Severance Plan §§ 4.3 ("The Administrator . . . shall have absolute discretion in interpreting and applying the terms of this Plan."), 6.4 (granting Pension Committee or its duly authorized representative "the sole and complete discretion to construe and interpret the Plan").  Under ordinary circumstances, therefore, the arbitrary and capricious standard would apply.

However, Plaintiff contends that, because the Committee's review of his appeal was untimely, the *de novo* standard applies.  In that regard, Plaintiff cites to Gritzer v. CBS, Inc., 275 F.3d 291 (3d Cir. 2002), to support his position.  In Gritzer, because the Plan Administrator failed to respond to the plaintiffs' claim for benefits within 90 days, the "claim was thereby deemed 'denied.'"  Id. at 294.  The Third Circuit found that "[w]here a trustee fails to act or to exercise his or her discretion, *de novo* review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer."  Id. at 296.

I do not find that the rationale of Gritzer applies under the facts here.  In Gritzer, there was no evidence in the record that the defendant committee construed the benefits plan at issue; indeed, the Plan Administrator failed to make any determination.  Here, to the contrary, Defendants' Claims Administrator made an initial determination providing the reasons for denying Plaintiff's severance request, i.e., the Denial Letter.  Although at the second level of appeal, the reviewing

8

Committee issued an untimely decision, it nonetheless provided reasons for the denial which mirrored the Claims Administrator's determination. Thus, the record includes both the decisions of the Committee and the Claims Administrator and their construction of the Severance Plan. In that regard, under Gritzer, the court should defer to the analysis conducted by the administrator.

The arbitrary and capricious standard mandates that the claim determination will be upheld unless it is unreasonable or unsupported. Doroshow v. Hartford Life and Acc. Ins. Co., 574 F.3d 230, 233 (3d Cir. 2009). ("Under a traditional arbitrary and capricious review, a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law"). Moreover, "[t]he scope of this review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Id. (internal quotation marks omitted). However, while the arbitrary and capricious standard is extremely deferential, "[i]t is not … without some teeth. Deferential review is not no review, and deference need not be abject." Moskalski v. Bayer Corp., No. 2:06-cv-568, 2008 U.S. Dist. LEXIS 39970, at *4 (W.D. Pa. May 16, 2008) (quoting McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003)).

In addition, the Supreme Court has advised that in conducting a review under the arbitrary and capricious standard, one factor a court should consider is whether an administrator or fiduciary is operating under a conflict of interest. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). However, while a conflict of interest exists if the employer pays an administrator to both fund and administer a plan, id. at 112, the Third Circuit has held that there is no conflict where an internal committee is established and given power of discretion with regards to the interpretation of the plan and administration of its benefits. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000); Post v. Hartford Ins. Co., 501 F.3d 154, 164 n. 6 (3d Cir.

9

2007). The Severance Plan names the Pension Committee as the Plan Administrator and explicitly confers power of discretion on the Plan Administrator and its designees; thus, there is no implication of a conflict of interest which must be considered.

## II. Severance Benefits

To reiterate, the Claims Administrator and the Benefits Claims Committee denied Plaintiff's request for severance benefits on the basis that the circumstances surrounding Plaintiff's employment termination did not fall within any of the Severance Eligibility events. Defendants provide three reasons to support their interpretation of the Severance Plan. First, Defendants argue that the language "inability to meet the requirements of his or her position" in Article 4.1(a)(ii) excludes failure to return to work because of a long-term disability. Def. Br. at 15–16. Rather, Defendants contend, citing to Article 1.1 of the Severance Plan, that the Severance Plan's "sole" purpose "is to assist Participants when they are unemployed during the transition period when they are attempting to secure a new position." Defs. Br. at 14–15. According to Defendants, when Plaintiff took LTD status and began to receive LTD benefits, he was not in a transition period during which he was attempting to secure new employment; instead, he was unable to work. Id. at 16. Thus, Plaintiff was not entitled to severance benefits. Id.

Second, Defendants emphasize that the phrase "inability to meet the requirements of his position" is qualified by the parenthetical language, "as determined by management of the [employing company]." Id. at 17. In contrast, long-term disability is not determined by an employee's manager, but rather by the LTD claims administrator. Id. at 17–18. Thus, disability status does not fall within the ambit of § 4.1(a)(ii). Finally, Defendant argues that Article 4.1(a), when reviewed under the doctrine of noscitur a sociis, involves "severance events" in which termination occurs "as a result of management business actions." Id. at 18. Subpart (i) addresses

10

termination as a result of "position elimination," while subpart (iii) addresses termination as a result of "reduction in force." Id.; see also Severance Plan § 4.1(a)(i), (iii).

Plaintiff nonetheless argues that under the plain language of the Severance Plan, he is entitled to severance benefits. Pl. Br. at 9. Plaintiff reasons that under the definition of "Eligible Employee", that is, "a regular, full-time, or part-time salaried or hourly employee of a U.S. Affiliated Company who is not a member of a collective bargaining unit," his employment status did not change as a result of being placed on either short-term or long-term disability status. Id. Second, examining the Severance Plan's purpose, Plaintiff maintains that nothing in the description of the Severance Plan's purpose excludes him or any other long-term disability claimant from obtaining severance benefits because Plaintiff's LTD status did not preclude him from attempting to secure a new position. Pl. Br. at 10. Finally, Plaintiff argues that he was placed on LTD status because he was unable to "meet the requirements of his or her position," and therefore he falls within the language of § 4.1(a)(ii). Pl. Br. at 9–10. Although he acknowledges the parenthetical language that the company management must determine inability to meet the requirements of the position, Plaintiff counters that "the Plan Administrator represents the 'management' of Becknell's employer." Id. at 10.

It is black letter law that an ERISA plan should "be construed as a whole," and the specific language of each provision should be interpreted in the context of the full Plan. Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 93 (3d Cir. 1992). Evaluating the reasonableness of the Committee's interpretation thus requires the court to examine "whether the interpretation is consistent with the goals of the Plan." Moench v. Robertson, 62 F.2d 553, 556 (3d Cir. 1995). I find that the Claim Administrator's interpretation and application of the Severance Plan terms is consistent with the goals of the Plan and not arbitrary and capricious. Under a reasonable reading

11

of the Severance Plan, Plaintiff was ineligible for severance benefits when his long-term disability ended in June 2009.[3] The Severance Plan language supports this interpretation in several ways.

First, the Severance Plan's stated purpose is to provide severance benefits for an employee when he or she is attempting to find other employment. Severance Plan § 1.1. That purpose is consistent with interpreting the "inability to meet the requirements of his or her position" clause of Article 4.1(a)(ii) as excluding an employee who is receiving long-term disability payments. For an employee to be placed on LTD status, he or she must be "totally disabled," meaning the employee is unable "to perform the Essential Functions of his or her Regular Occupation." See Disability Plan at 6. More importantly, for LTD benefits to continue after one year, the employee "must be unable to perform *any job* . . . with or without reasonable accommodation." Id. Because Plaintiff was on LTD status for fourteen months, he was considered totally disabled—that is, unable to work in any job. Thus, Plaintiff is incorrect to claim that his LTD status did not prevent him from seeking out other employment; indeed, were he able to obtain other employment, he could not receive LTD benefits. Because those obtaining LTD benefits are unable to work, it is reasonable to exclude those receiving long-term disability payments from also receiving severance benefits which are intended to aid the employee while he or she searches for a new job—and is necessarily capable of working.

Second, as noted by Defendants, the language in § 4.1(a)(ii) of the Severance Plan requires that the inability to meet the requirements of the position must be "determined by management of the U.S. Affiliated Company employing the Eligible Employee at the time of termination." Plaintiff argues that the "Plan Administrator" of the Disability Plan represents the management of

---

[3] Notably, in two prior decisions, involving unrelated parties, the Claims Committee also interpreted the Severance Plan's definition of severance eligible events as excluding the end of employment when the individual moved to LTD status. Def. Br. at 10.

12

Plaintiff's employer and thus is "management." Pl. Br. at 10. It is true that the Disability Plan defines "Employer" as including both J & J and its subsidiaries, and defines the Plan Administrator as the J & J Pension Committee. See Pl. Br. at 10; Disability Plan Art. 1. However, the initial determination of disability—and therefore, of the employee's ability to work—under the Disability Plan is made by the Claims Service Organization, which is a separate entity entirely. See Disability Plan, Art. 1, Art. 4; Disability Plan Summary at 17 (stating that "Reed Group will be responsible for reviewing applications for benefits and making benefit determinations"). While the Pension Committee will render a decision where there is a second appeal from the denial or limitation of benefits, see Disability Plan at 10, there will be many cases where the Pension Committee will not make a determination of an employee's ability to work. Thus, even assuming arguendo that the Disability Plan Administrator could be considered "management"[4] for the purposes of the Severance Plan, the Pension Committee does not generally make the decision that an employee is unable to meet the requirements of his or her position. Because the LTD determination is not made by the "manager" of the employee, it is reasonable to interpret § 4(a)(ii) as not applying to employees who receive long-term disability payments.

Finally, Defendants contend that under the principle of noscitur a sociis, the "severance events" in § 4(a)(i) and (iii) of the Plan address terminations that occur as a result of "management actions"; Defendants assert that (ii) should be read the same way. Def. Br. at 18. Plaintiff argues that there is nothing inconsistent with reading (ii) to include termination as the result of disability as all of the events "relate[] to a loss of employment." Pl. Br. at 11. The doctrine of noscitur a

---

[4] I also note that the Severance Plan specifies that the determination of inability to meet the requirements of the position is to be made by "management of the U.S. Affiliated Company employing the Eligible Employee." There is nothing in the record to suggest that the J & J Pension Committee would be part of the management of Ethicon, Inc., Plaintiff's employer.

13

sociis, simply stated, is that "a word is known by the company it keeps"; that is, a meaning of a word or phrase should be interpreted to be consistent with the surrounding phrases. Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995). This doctrine, most commonly used in statutory interpretation, has been applied to ERISA plans. See Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 175 (D.C. Cir. 2006).

Here, reading § 4.1(a)(ii) to include termination by reason of obtaining disability benefits would be contrary to the doctrine of noscitur a sociis. The "severance event" listed under § 4.1(a)(1) is "position elimination," and the event in § 4.1(a)(iii) is "reduction in force." Both of these are involuntary terminations, based on the decisions of company management. In contrast, the decision to apply for long-term disability benefits is a voluntary one made by the employee, albeit necessitated by medical needs.[5] Defendant's interpretation of § 4.1(a)(ii) is consistent with the remainder of § 4.1(a): that it is an involuntary determination by the management of the company which requires the employee to be terminated. This interpretation is reasonable.

I find that Defendants' interpretation of the Severance Plan, which excludes employees who have received long-term disability payments from also receiving severance benefits is reasonable and not arbitrary and capricious. Accordingly, the denial of Plaintiff's claim is upheld, and summary judgment is granted for Defendants.[6]

## CONCLUSION

---

[5] I note that the Plan states that an employee is not eligible for severance benefits where the termination resulted from "voluntary termination by resignation, retirement, or otherwise." Plan, § 4.1(b)(i).

[6] Defendants also reassert that Plaintiff's initial claim for severance benefits was untimely. Def. Br. at 20. I have already determined that Defendants cannot raise this argument, having failed to assert it in the initial denial of severance benefits. See Opinion, April 21, 2014. Having now determined that Defendants are entitled to summary judgment on other grounds, I need not address this issue again.

Based on the foregoing reasons, Defendants' motion for summary judgment is granted. Because the named Plaintiff can no longer act as an effective class representative, the Motion for Class Certification is denied as moot.[7]  See Cowen v. Bank United of Texas, FSB, 70 F.3d 937, 941 (7th Cir. 1995).  An appropriate order shall follow.

Date: June 19, 2015

                                                                    s/Freda L. Wolfson
                                                         Hon. Freda L. Wolfson, U.S.D.J.

---

[7] I note, moreover, that grounds for summary judgment described here would apply to the entire prospective class. Id.